UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MARIE CLOSE,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF VACAVILLE and STUART K. TAN,<br><br>    Defendants. | CIV. NO. 2:17-1313 WBS DB<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

    Plaintiff Lisa Maria Close initiated this action against the City of Vacaville ("the City") and Officer Stuart K. Tan ("Officer Tan")(collectively "defendants") for violation of her civil rights under 42 U.S.C. § 1983 and state law arising out of her arrest in 2016. Presently before the court is defendants' Motion to Dismiss plaintiff's Monell claim against the City and claim for injunctive relief. (Docket No. 6.)

I.    Factual and Procedural Background

    On June 2, 2016, plaintiff attended a doctor's appointment in which she disagreed with her doctor about her

treatment. (Compl. ¶ 10 (Docket No. 1).) At one point plaintiff walked out of the exam room and had a discussion with hospital personnel. (Id.) Shortly thereafter, plaintiff returned to the exam room to collect her belongings. (Id.) A hospital security guard entered the exam room at that point and informed plaintiff that he was going to escort her off the property and that a police officer was on the way. (Id.) Plaintiff alleges that prior to this she had not been asked to leave the hospital and did not think there was any need for a security guard or police officer to escort her from the property. (Id.) Plaintiff then used her cellphone to call a hospital supervisor and was placed on hold. (Id.)

While plaintiff was on hold, Officer Tan, a City of Vacaville police officer, arrived at the hospital and informed plaintiff that she was trespassing and needed to leave. (Id. ¶ 11.) Plaintiff informed Officer Tan that she was on the phone trying to discuss the incident with a hospital supervisor, but Officer Tan ignored plaintiff and grabbed her arm in an attempt to drag her. (Id.) Officer Tan grabbed plaintiff's cell phone from her hand, causing it to fly to the other side of the room. (Id.) Plaintiff then informed Officer Tan that she suffers from Asperger's Syndrome, but he did not respond to her statement. (Id.) Officer Tan then "bear hugged" plaintiff, causing her to temporarily lose consciousness and fall to the floor. (Id.) When plaintiff regained consciousness and stood up, Officer Tan again grabbed plaintiff and knocked her to the ground. Officer Tan also twisted plaintiff's arm, causing her severe pain. (Id.) Officer Tan then handcuffed plaintiff, escorted her off the

property, and transported her to jail. (Id. ¶ 12.)

At some point thereafter, plaintiff was transported from jail to a medical facility after complaining of pain in her arm. (Id.) According to plaintiff, hospital staff informed her that her arm was broken. (Id.) Plaintiff was released from the hospital and given a notice to appear in Sacramento County Superior Court. (Id. ¶ 13.) However, as of the date the complaint was filed, the District Attorney's Office has not filed any criminal charges against plaintiff. (Id.)

On June 26, 2017, plaintiff filed this complaint alleging five causes of action against Officer Tan and one against the City. The complaint requests both money damages and injunctive relief.

## II. Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under this standard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

III. Discussion

    A.    Monell Claim Against the City

A municipality is subject to liability under § 1983 only when a violation of a federally protected right can be attributed to (1) an express municipal policy (Monell v. New York City Dep't of Soc. Servs., 436 U.S. 648, 690 (1978)); (2) a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law" (City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1998)); (3) the decision of a person with "final policymaking authority" (Id. at 123); or (4) inadequate training that is deliberately indifferent to an individual's constitutional rights (City of Canton v. Harris, 489 U.S. 378 (1989)).

        1.    Policy, Pattern, or Custom

"[A] municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation." Harris, 489 U.S. at 389. Thus, plaintiff must demonstrate a sufficient causal connection between the enforcement of the supposed municipal policy or practice and the violation of her federally protected right. Id.; Connick v. Thompson, 563 U.S. 51, 60 (2011). Where, as here, a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. Bd. of the Cty. Comm'rs of Bryan Cty. V. Brown, 520 U.S. 397, 404 (1997).

To show municipality liability based on a practice or custom, the relevant practice must be a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Castro v. County. of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016), citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion). Unless the policy itself is unconstitutional, or an authorized policymaker committed the unconstitutional act, "liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded on practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996), holding modified by Navarro v. Block, 250 F.3d 729 (9th Cir. 2001). A custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded. Hunter v. County of Sacramento, 652 F.3d 1225 at 1233-34 (9th Cir. 2011).

Here, plaintiff alleges that the "Chief of Police and the Professional Standards unit or the Vacaville Police Department had final policy making authority . . . concerning the acts of the police officer." (Compl. ¶ 28.) However, the complaint does not allege any facts indicating that there was any city custom, policy, or practice. There are no facts suggesting that there was a practice or custom beyond the single incident at issue in this case, and plaintiff does not identify any explicit

5

policy.  Accordingly, plaintiff's municipal liability claim based on a pattern, policy, or custom must be dismissed.

### 2. Ratification

"To show ratification, a plaintiff must prove that the authorized policymakers approved a subordinate's decision and the basis for it." Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999). Municipal policymakers must make a conscious, affirmative, deliberate choice to endorse a subordinate's decision and the reasoning behind it, and "simply going along with the discretionary decisions made by one's subordinates . . . is not a delegation to them of authority to make policy." Praprotnik, 485 U.S. at 128-30. Further, the Ninth Circuit has indicated that plaintiffs must show that municipal policymakers had knowledge of the unconstitutional conduct their subordinates engaged in before the unconstitutional violations ceased. Christie, 176 F. 3d at 1239-40.

Here, plaintiff does not indicate any facts suggesting that the City or any official policymaker knew of any unconstitutional conduct by city officers and approved of such conduct.  The complaint merely states that the Chief of Police and the Professional Standards unit or the Vacaville Police Department had final policy making authority.  (Compl. ¶ 28.) Plaintiff later contends that the City "was on notice of Officer Tan's constitutional violations when [plaintiff] filed her tort claim."  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 2.)  However, this argument, even if accepted as true, does not indicate that the City, or any official policymaker, had any knowledge whatsoever of the alleged unconstitutional conduct before it was

6

completed. Accordingly, plaintiff has failed to state a claim based on the theory of ratification.

        3.    <u>Inadequate Training</u>

A municipality can be held liable based on a failure to train theory "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contract." <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989). To meet this standard, "the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." <u>Id.</u> at 389. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Connick</u>, 563 U.S. at 61.

Here, the complaint does not explain what the City's training consisted of, whether there were prior similar acts or any other indications that there was a need for more or different training, or whether the alleged inadequacy was likely to result in constitutional violations. Because the complaint does not plead these facts, which are necessary to meet the high standard for deliberate indifference, it is insufficient to state a valid § 1983 claim against the City under the theory of inadequate training.

    B.    <u>Injunctive Relief</u>[1]

When determining what remedies are available for the

---

[1] In her Opposition plaintiff did not address defendants' arguments related to her claim for injunctive relief.

violation of a federal right, damages are the default and equitable relief is the exception. See, e.g., Franklin v. Gwinnet Cty. Pub. Sch., 503 U.S. 60, 75-76 (1992) ("[I]t is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief.") "[T]he principles of equity . . . militate heavily against the grant of an injunction except in the most extraordinary circumstances." Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1042 (9th Cir. 1999). When a less drastic remedy is sufficient to redress a claimant's injury, then no recourse to the additional and extraordinary relief of an injunction is warranted. Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139 (2010).

To have standing to assert an equitable relief claim, plaintiff must show "the likelihood of substantial and irreparable injury and the inadequacy of remedies at law." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). Here, plaintiff's complaint has failed to do that. In fact, all of plaintiff's allegations relate only to one particular previous incident, and she has not demonstrated any likelihood or threat of future harm, which is necessary to warrant equitable relief. Plaintiff also fails to allege why money damages are inadequate.

Additionally, "a federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable." Hodgers-Durgin, 199 F.3d at 1042. Here, the order sought by plaintiff presumably seeks implementation of particular police policies and procedures, which would require the Court's future intervention in a manner that could likely become "intrusive and unworkable." See id.

8

Accordingly, because plaintiff has failed to establish standing to assert claims for equitable relief or to state any claim upon which injunctive relief may be granted, her prayer for an injunction must be dismissed.

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss (Docket No. 6) be, and the same hereby is, GRANTED. Plaintiff's claim for injunctive relief and claim against the City are dismissed. All claims against Officer Tan remain. Plaintiff is given twenty days from the date this Order is signed to file a Second Amended Complaint, if she can do so consistent with this Order.

Dated: December 19, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE