UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| LISA MARIE CLOSE,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF VACAVILLE and STUART K. TAN,<br><br>    Defendants. | No.  2:17-cv-01313-WBS-DB<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>MOTION FOR SUMMARY JUDGMENT,</u><br><u>OR ALTERNATIVELY, PARTIAL</u><br><u>SUMMARY JUDGMENT</u> |

----oo0oo----

Plaintiff Lisa Maria Close initiated this action against the City of Vacaville and Officer Stuart K. Tan alleging violations of her rights under 42 U.S.C. § 1983 and California law arising out of plaintiff's arrest in 2016. Presently before the court is defendant Tan's Motion for Summary Judgment, or Alternatively, Partial Summary Judgment. (Docket No. 29.)

I.   <u>Factual and Procedural Background</u>

On June 2, 2016, plaintiff attended a doctor's appointment, and during that appointment, she and her doctor

1

disagreed about her course of treatment. (Close Dep. at 41:19-23 (Docket No. 30-1).) Following the doctor's departure from the examination room, plaintiff walked out of the exam room and had a discussion with hospital personnel. (Id. at 41:23-42:15) Shortly thereafter, plaintiff returned to the exam room to collect her belongings. (Id. at 42:15-16) At that time, a hospital security guard came to the door of the exam room and informed plaintiff that he was going to escort her off the property and that a police officer was on the way. (Id. at 46:1-46:4) Plaintiff alleges that she had not done anything to necessitate calling a police officer to escort her from the property. (Id. at 46:5-6) The security guard asked plaintiff to leave the exam room "at least twice." (Id. at 59:9-10.) Plaintiff then used her cellphone to call a hospital supervisor and was placed on hold. (Id. at 48:20-23.)

Concurrently, defendant Tan, a City of Vacaville police officer, was dispatched to Sutter Regional Medical Center in Vacaville in response to reports of a person who refused to leave an exam room. (Tan Dep. 44:21-45:6 (Docket No. 30-2).) After defendant Tan arrived at the hospital, he spoke with the security guard who had asked plaintiff to leave the exam room (Id. 47:17-24.) Defendant Tan testified that he "specifically clarified" with the security guard that he had asked plaintiff to leave and she refused to do so. (Id. 47:25-48:2.) Before initiating interactions with plaintiff, defendant Tan also spoke with medical care providers at the medical center who confirmed what the security guard had said and expressed their desire to have plaintiff escorted from the property. (Id. 49:2-5.)

After speaking with medical center personnel for approximately five to ten minutes, defendant Tan entered the exam room. (Id. 51:17.) He then "says some things to [plaintiff] about trespassing." (Close Dep. at 53:25-54:1.) Plaintiff responded that she just needed to discuss the incident with a hospital supervisor. (Id. at 54:6-7.) Defendant Tan asked plaintiff to leave "a number of times," (id. at 59:11-12,) but plaintiff did not leave the exam room (id. 60:10-12).

Following approximately 15-minutes of dialogue with plaintiff, defendant Tan activated his body camera. (Tan Dep. 54:6-10.) After a few more minutes of plaintiff refusing to leave the room, defendant Tan grabbed plaintiff's phone and the two grappled for it. (Close Dep. at 124: 7-8.) Defendant Tan then grabbed plaintiff. (Id. at 125:8.) Plaintiff fell to the floor. (Id. at 125:8-10) When plaintiff got up, Officer Tan again grabbed her and pushed her to the ground. (Id. at 125:16) Officer Tan also twisted plaintiff's arm, causing her severe pain. (Id. at 125:17-126:3)

On June 26, 2017, plaintiff filed a complaint alleging five causes of action against defendant Tan and one against the City of Vacaville. (Docket No. 1). The complaint requests both money damages and injunctive relief. This court previously dismissed plaintiff's claim against the City of Vacaville. (Docket No. 18.) The claims against defendant Tan remain.

II. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial. Id. Any inferences drawn from the underlying facts must, however, be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

III. Discussion

In order to succeed on a § 1983 claim, a plaintiff must show, "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632-633 (9th Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986)).

Defendant Tan seeks summary judgment on the grounds that: (1) both of plaintiff's claims under § 1983 are meritless;

and (2) he is entitled to qualified immunity from plaintiff's claims.

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In determining whether a government official is entitled to qualified immunity, the court must conduct a two-pronged inquiry. See Tolan v. Cotton, 572 U.S. 650, 655 (2014). The first prong of the qualified immunity inquiry asks whether the facts, when "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right [.]" Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds by Pearson, 555 U.S. 223. The second prong of the qualified immunity asks whether the right which was violated was "clearly established at the time of the defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. at 232 (quotation omitted). District courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

Given the circumstances of this case, the court will begin with the second prong of the qualified immunity analysis, whether the constitutional rights plaintiff alleges defendant violated were clearly established at the time of the conduct at

issue in this case.

## A. Probable Cause for Arrest

Under the Fourth Amendment, a warrantless arrest is constitutional if the arresting officer has probable cause to believe that a crime has been, or is being, committed. Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "The test for whether probable cause exists is whether at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the petitioner had committed or was committing an offense." Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007) (quoting United States v. Jensen, 425 F.3d 698, 704 (9th Cir. 2005) (citation omitted), cert. denied, 547 U.S. 1056 (2006)).

In evaluating the second prong of the qualified immunity analysis in the context of an unlawful arrest claim, the court must look to "whether it is reasonably arguable that there was probable cause for arrest - - that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." Rosenbaum v. Washoe County, 663 F.3d 1071, 1076 (9th Cir. 2011).

Defendant Tan argues that he had probable cause to arrest plaintiff for violation of California Penal Code § 602. Specifically, he contends that he had probable cause to arrest plaintiff for violating California Penal Code §§ 602(o).[1]

---

[1] Defendant Tan also argues that he had probable cause to arrest plaintiff for violating California Penal Code Section 602.1(a), which states that:

Under California Penal Code § 602(o) a person is guilty of a misdemeanor if he or she willfully commits a trespass by:

> Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession.

California Penal Code § 602(o).

Plaintiff's opposition does not address defendant Tan's claim that he had probable cause to arrest plaintiff for violation of California Penal Code § 602(o).[2] The court will, nevertheless, go through each element of the statutory offense

---

> Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor, punishable by imprisonment in a county jail for up to 90 days, or by a fine of up to four hundred dollars ($400), or by both that imprisonment and fine.

California Penal Code § 602.1(a).

Because the court finds that defendant Tan is entitled to qualified immunity against defendant's § 1983 claims for unlawful arrest based on his reasonable belief that she was in violation of California Penal Code § 602(o), it will not reach the question of whether it was also arguable that probable cause also existed for plaintiff's arrest under California Penal Code § 602.1(a)

[2] Rather than addressing defendant Tan's arguments that he had probable cause to arrest plaintiff under California Penal Code § 602(o) and California Penal Code § 602.1(a), plaintiff argues that defendant Tan did not have probable cause to arrest her for violating California Penal Code § 602(m) or § 602(k).

7

and, taking the facts in the light most favorable to the
plaintiff, evaluate whether reasonable officers could disagree
about whether there was probable cause to arrest plaintiff for
violating California Penal Code § 602(o).

Plaintiff avers that prior to the security guard's
appearances, no one from the hospital had asked her to leave.
She admits, however, that the security guard[3] asked her to leave
the exam room "at least twice" (Close Dep. 59:9-10) and that she
did not comply with this request. Plaintiff does not dispute
defendant Tan's statements that prior to initiating his
interaction with her, he spoke with the security guard and at
least one facility employee who told him that plaintiff had
refused their requests that she leave the exam room. Plaintiff
also admits that she ignored defendant Tan's repeated requests to
vacate the exam room.

California Penal Code § 602(o) applies only when
trespassers refuse to leave structures that are "not open to the
general public." California statutory law provides no guidance
as to what properties are "open to the general public" under §
602(o). See Garcia v. City of Santa Clara, No. 10-cv-02424-SI,
2016 WL 7212192, at *3 (N.D. Cal. Dec. 13, 2016).

The argument that the entire Sutter Regional Medical
Center was open to the general public fails in light of the case
law evaluating what constitutes openness to the general public

---

[3] It is not disputed that defendant Tan could reasonably believe that the security guard, who plaintiff concedes twice told her to leave the room, was a "person in lawful possession" of the premises for the purposes of California Penal Code § 602(o).

8

for the purposes of California's trespassing statute. Both California state courts and federal district courts applying California law have ruled that the mere fact that some portion of a structure or property is open to some of the public, some of the time, does not mean that the entire structure or premises is "open to the public."

In James v. City of Long Beach, 18 F. Supp. 2d 1078 (C.D. Cal. 1998), the court considered whether a defendant police officer had probable cause to arrest a plaintiff who refused to leave a baseball stadium. The statute at issue was California Penal Code § 602(n), which applied to trespasses upon structures or properties "not open to the general public." The plaintiff in James argued that there was no probable cause to arrest him for violating California Penal Code § 602(n) because baseball stadiums are open to the public. In rejecting this argument, the court recognized a distinction between areas of public facilities which anyone can freely enter and those for which entry requires a ticket. Id. 1085.

The medical exam room plaintiff refused to vacate has more in common with the ticketed-entry parts of a baseball stadium than with the privately-owned space adjacent to a baseball stadium and open to the public at all times. Patients are typically escorted to the exam room by facility staff; members or the public do not typically visit or use exam rooms without making appointments in advance; if a medical care provider is using an exam room to treat one patient, then all other members of the general public are typically excluded from that room. Given these facts, defendant Tan's belief that the

9

exam room plaintiff refused to leave was "not open to the general public" for purposes of California Penal Code § 602(o) enforcement was eminently reasonable.

There is no dispute as to the following facts, all of which defendant Tan either had personal knowledge of, or knew on the basis of "reasonably trustworthy information" from Sutter Regional Medical Center personnel. First, at the time of the arrest, plaintiff had been asked to leave the exam room, at least twice, by a person in lawful possession of Sutter Regional Medical Center and refused to comply. Second, the area plaintiff refused to leave was "not open to the general public" for the purposes of California Penal Code § 602(o). Third, defendant Tan confirmed with the security guard that plaintiff had repeatedly refused to comply with his instructions to leave. Fourth, defendant Tan repeatedly asked plaintiff to leave the exam room and she refused. Collectively, these facts are "sufficient to warrant a prudent person in believing that the [plaintiff] had committed or was committing an offense." See Blankenhorn, 485 F.3d at 471.

Thus, taking all of the facts in the light most favorable to the plaintiff, it is clear that when defendant Tan arrested plaintiff, he did so pursuant to a reasonable belief that there was probable cause to arrest her for violating California Penal Code § 602(o). Accordingly, the court will grant summary judgment for defendant Tan on his qualified immunity defense against plaintiff's federal unlawful detention[4]

---

[4] It is not clear from the complaint, defendant Tan's motion, or plaintiff's opposition to defendant Tan's motion when

10

and arrest claim.

B. Excessive force

Plaintiff contends that defendant Tan violated her Fourth Amendment rights by using excessive force incident to her arrest. (FAC ¶¶ 22-25.) Defendant Tan moves for summary judgment on the ground of qualified immunity for the reason that, given the circumstances at issue in the case and the case law at the time of the incident, plaintiff had no clearly established right to be free of this level of force.

1. Legal Standard

"Force is excessive when it is greater than is reasonable under the circumstances." Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). The reasonableness of the use of force under the Fourth Amendment is measured by factors such as, "the severity of

---

the parties believe that plaintiff's detention began and her arrest ended. Both parties agree that defendant Tan and plaintiff's encounter culminated in plaintiff's arrest. Determining when precisely the detention ended and the arrest began based on that footage and other facts in the record would be a very fact-intensive inquiry. What is imminently clear, however, is that the facts at issue here are very different from those at issue in a typical Terry stop. See Terry v. Ohio, 392 U.S. 1, 16 (1968). Moreover, plaintiff's theory of the case seems to suggest that defendant Tan "detained" plaintiff by standing close to her and yelling at her to leave the exam room and take her phone call in the lobby. Given that a detention is defined as an incident in which a police officer "accosts an individual and restrains his freedom to walk away," id. at 16, it strains credibility to suggest that defendant Tan somehow detained plaintiff by telling her, repeatedly and insistently, to walk away. Rather than parsing the encounter to determine when a detention ended and an arrest began, the court focuses on the threshold question of whether probable cause existed for arresting plaintiff at the moment defendant Tan stopped telling plaintiff to leave and began physically removing her.

11

the crime at issue, whether the suspect poses an immediate threat
to the safety of the officers or others, and whether [she] is
actively resisting arrest or attempting to evade arrest by
flight." See Graham v. Connor, 490 U.S. 386, 396 (1989).

### 2. Plaintiff's Contention Defendant Tan Choked Her

In her opposition to defendant's Motion for Summary
Judgment, plaintiff claims for the first time that defendant Tan
choked her. (Pl.'s Opp. to Def.'s Mot. for Summ J. at 5 (Docket
No. 36).) This claim is apparently based entirely on plaintiff's
video recorded statement that defendant Tan is placing "pressure
on [her] throat." (See Kellis Decl., Ex. C at 05:35-05:37
(Docket No. 31-1).) Nowhere in the videotape does plaintiff say
that defendant Tan was choking her.

The allegation that defendant Tan choked plaintiff is
likewise contrary to the documentary record in this case. In her
deposition, plaintiff was asked "So, once Officer Tan arrives,
what happens next?" (Close Dep. 53:22-23) and "So, after the
phone goes flying across the room, what happens next?" (Id.
124:24-25). Her responses to these questions make no mention of
the choking she now alleges. Rather, plaintiff responded that
she "grappled" with defendant for her phone (Close Dep. at 124:8,
15) and that defendant grabbed her, pushed her to the ground, and
twisted her arm in a manner that led to "an explosion of pain."
(See Close Dep. at 125:16-126:3.)

Similarly, defendant's interrogatories asked plaintiff
to "please describe with particularity the exact manner in which
the incident occurred" (Crawford Decl., Ex. D at 3 (Docket No.
41-3),) to "state all facts that support your contention that you

12

suffered physical injuries as a result of the incident" (id. at 4,) and to "state all facts that support your contention that you suffered emotional trauma, worry, anxiety, humiliation and distress as a result of the incident," (id. at 6 (quotation omitted).) Plaintiff's answers to these interrogatories make no mention of the alleged choking. Rather, she states that defendant Tan "grabbed [her] arm and attempted to drag her from the exam room," "bear hug[ged]" her, and "twist[ed] her arm." (Id. at 4)

The questions posed to Close in her deposition and by defendant's interrogatories provided plaintiff ample opportunity to state, under oath, that she was choked by defendant Tan. She did not. Instead, she made seemingly less serious allegations about defendant Tan "bear hugging" and "grabbing" her. The discrepancy between the answers Close has previously given and her new contention that defendant Tan choked her suggests that the latter is a "a self-serving attempt to manufacture issues of fact to defeat summary judgement." Yeager v. Bowlin, No. CIV. 2:08-102-WBS-JFM, 2010 WL 95242, at *5 (E.D. Cal. Jan. 6, 2010), aff'd in part, 693 F.3d 1076 (9th Cir. 2012), and aff'd in part, 495 F. App'x 780 (9th Cir. 2012). As such, the court will disregard plaintiff's unsubstantiated contention that she was choked in evaluating defendant's Motion for Summary Judgment. See id.

3. Discussion

The court has carefully reviewed the video of the incident as recorded on Officer Tan's body camera. (See Kellis Decl., Ex. C.) Applying the Graham factors as a whole, the level

13

of force exerted in this incident was not excessive under clearly established law. Although the suspected crime was only a misdemeanor, and it did not appear that plaintiff posed a serious threat of injury to the officer or others, the video does show that plaintiff was actively resisting Officer Tan's attempts to place her in custody. No other officers assisted in plaintiff's arrest, and there were no weapons of any sort used against plaintiff. Officer Tan demonstrated extreme patience in attempting to reason with plaintiff and persuade her to leave voluntarily before finally exerting any force whatsoever. When he ultimately decided she had to be forcibly removed, he only used that level of force which a reasonable officer would believe to be necessary under the circumstances.

Plaintiff did not have a clearly established right to be free of some minimal amount of force incident to her arrest. Given the relevant caselaw at the time of the incident, a reasonable officer in the position of defendant Tan reasonably could have believed that the force used, including "bear hugging" plaintiff, pushing her to the ground, and twisting her arm, during the course of her arrest, as plaintiff alleges, was not an excessive use of force. For this reason, defendant Tan is entitled to qualified immunity on plaintiff's § 1983 excessive force claim.

Since defendant Tan is entitled to qualified immunity on both of plaintiff's § 1983 claims, the court will grant defendant's motion for summary judgment. See Checker Cab Philadelphia v. Philadelphia Parking Auth., 306 F. Supp. 3d 748, 753 (E.D. Pa. 2018) ("[A]t the summary judgment stage, if the

right asserted is not clearly established, it is possible for a defendant to be entitled to qualified immunity - - and to a grant of summary judgment - - even if there is a factual dispute as to whether the defendant's conduct violated constitutional rights.")

    C.   State Law Claims

Plaintiffs' fourth, fifth, and sixth claims are state law claims and this court's jurisdiction over them is based on supplemental jurisdiction under 28 U.S.C. § 1367. Given that the court will grant defendant Tan summary judgment on the federal claims against him, see supra, the court will dismiss plaintiffs' pendant state law claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). This dismissal will be without prejudice. See Brandwein v. California Bd. of Osteopathic Exam'rs, 708 F.2d 1466, 1475 (9th Cir. 1983).

IT IS THEREFORE ORDERED that defendant Tan's Motion for Summary Judgment (Docket No. 29) is GRANTED. Plaintiffs' First and Second claims are dismissed with prejudice. Plaintiffs' Fourth, Fifth, and Sixth claims are dismissed without prejudice to refiling in state court. The Clerk of Court is instructed to close the file in this case.

Dated: February 21, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE